08-5112-cv
WWBITV, Inc. v. The Village of Rouses Point

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: August 27, 2009                    Decided: December 9, 2009 )

Docket No.  08-5112-cv

WWBITV, INC., SUSAN CLARKE, AND GARY CLARKE,

*Plaintiffs-Appellants*,

—v.—

THE VILLAGE OF ROUSES POINT, GEORGE RIVERS, in his official capacity and in his individual capacity, MICHAEL TETREAULT, JR., in his official capacity and in his individual capacity, AND BRIAN PELKEY, in his official capacity and in his individual capacity,

*Defendants-Appellees*.

Before:

MINER, KATZMANN, and LYNCH,[*] *Circuit Judges*.

After their building was demolished following a fire, plaintiffs-appellants WWBITV, Inc., Susan Clarke, and Gary Clarke brought civil rights claims and a supplemental state law

---

[*]At the time of oral argument, Judge Lynch was United States District Judge for the Southern District of New York, sitting by designation.

claim against defendants-appellees the Village of Rouses Point, George Rivers, Michael Tetreault, Jr., and Brian Pelkey. Plaintiffs-appellants now appeal from orders of the district court (Gary L. Sharpe, Judge) granting summary judgment for defendants-appellees on such of their federal claims as had not already been dismissed, and declining to accept jurisdiction over their state law claim.

AFFIRMED.

_____

MARK SCHNEIDER, Plattsburgh, New York, *for Plaintiffs-Appellants*.

THOMAS W. PLIMPTON, Stafford, Owens, Piller, Murnane & Trombley, PLLC, Plattsburgh, New York, *for Defendants-Appellees the Village of Rouses Point, George Rivers and Michael Tetreault, Jr*.

STEVEN C. SHAHAN, Taddeo & Shahan, LLP, Syracuse, New York, *for Defendant-Appellee Brian Pelkey.*

_____

GERARD E. LYNCH*, Circuit Judge*:

On June 6, 2006, an old hotel located in the Village of Rouses Point, New York, was badly damaged in a fire. The next morning, a team of contractors, acting under the direction of the Village's Board of Trustees, demolished most of what remained of the damaged building. Plaintiffs-appellants WWBITV, Inc., which owned the building, Susan Clarke, who owned WWBITV, and Susan Clarke's husband Gary Clarke filed suit, bringing claims under 42 U.S.C. § 1983 and under state law against defendants-appellees, the Village of Rouses

Point, George Rivers (the Village's mayor), Michael Tetreault, Jr. (the Village's code enforcement officer) and Brian Pelkey (the Village's fire chief). Plaintiffs-appellants alleged that their due process rights and their rights against unlawful seizure had been violated, as well as that the demolition had been an unlawful taking of private property without compensation under the Fifth Amendment and under New York law. The district court (Gary L. Sharpe, Judge) dismissed the substantive due process and Fifth Amendment claims and declined to exercise supplemental jurisdiction over the state law claim. The court later granted summary judgment for defendants-appellees on plaintiffs-appellants' remaining claims. This appeal followed.

**BACKGROUND**

The Village of Rouses Point lies in New York's northeast corner, where the state borders Vermont and Canada. The Hotel Holland was located in the Village's downtown area, along State Road 11, an important thoroughfare connecting New York and Quebec. The Hotel was owned by WWBITV, Inc., a Delaware corporation wholly owned by Susan Clarke, who ran the company together with her husband Gary Clarke. WWBITV did not operate the building as a hotel, but did use it to store video equipment.

Shortly after midnight on June 6, 2006, the Hotel Holland caught fire. Teams of fire fighters from Rouses Point and neighboring towns responded. At 2:20 a.m., having been told of the fire by a friend, Susan Clarke arrived at the scene. She remained there

until the fire was largely extinguished later that morning and then returned home. By the time Clarke left the scene, the building had been extensively damaged. The roof and the top floors had been completely destroyed. Debris hung off the hotel's facade, and officials were concerned that it would fall into the street. The instability of the building, as well as its proximity to the street, necessitated the closing of State Road 11.

At 11:30 a.m., the Board of Trustees for the Village held a special meeting to discuss the situation. The Board posted a notice of the meeting in the Village offices, but did not notify the Clarkes individually. At this meeting, the Board approved a motion pursuant to its local code to authorize the Village's fire chief, Brian Pelkey, to take measures to stabilize the building's remains and to make the street and sidewalk safe for the public. The Village then hired a contractor to demolish the portion of the building most damaged by the fire.

Demolition of the building began early on the afternoon of the 6th. As the demolition was starting, Susan Clarke learned from a friend that the hotel was being torn down. She immediately returned to the hotel to attempt to stop the demolition but was unsuccessful. That afternoon, the contractors demolished the burned portion of the building but left an unburnt annex to the building standing. This undemolished annex stood for several months, until it was itself condemned by the Village and torn down.

On June 10, 2006, Susan Clarke, together with her husband Gary Clarke,

4

commenced suit against the Village of Rouses Point, as well as its mayor (George Rivers), code enforcement officer (Michael Tetreault, Jr.), and fire chief (Brian Pelkey), all of whom they sued in both their official and individual capacities. The plaintiffs asserted claims under 42 U.S.C. § 1983, alleging that their substantive and procedural due process rights had been violated, as well as their rights against unlawful seizure under the Fourth Amendment of the U.S. Constitution and against unlawful taking of their property without compensation under the Fifth Amendment. The plaintiffs also made a related inverse condemnation claim under state law.

Defendants moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim for which relief can be granted. At a hearing on the motion, the district court dismissed plaintiffs' Fifth Amendment claim, finding it premature, and dismissed plaintiffs' substantive due process claims as not cognizable because the rights in question were already explicitly protected by other provisions of the Constitution, citing Albright v. Oliver, 510 U.S. 266 (1994) (plurality opinion). The court then declined to exercise supplemental jurisdiction over plaintiffs' state law inverse condemnation claim, finding that New York courts were better situated to adjudicate it.

The parties proceeded to discovery, and, in due course, defendants moved for summary judgment. The court granted summary judgment for defendants on all

remaining claims. Finding that there was competent evidence allowing Village officials to believe that an emergency existed and that nothing in the record indicated that this decision was abusive or arbitrary, the court ruled that there had been no procedural due process violation and no Fourth Amendment violation. Moreover, the court ruled that even if its determination that there had been no constitutional violation were mistaken, the individual defendants were entitled to qualified immunity, while liability on behalf of the Village itself was precluded by the fact that the decision to demolish the building was not the product of any municipal custom or policy.

On appeal, plaintiffs contest the district court's grant of summary judgment for the defendants, claiming that both their procedural due process and Fourth Amendment rights were violated. They also challenge the district court's determinations concerning qualified immunity and municipal liability. Finally, plaintiffs claim that it was an error for the district court to decline supplemental jurisdiction over their state law claim.

## DISCUSSION

I. Standard of Review

We review an award of summary judgment de novo, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009). Summary judgment may be granted only "if the pleadings, the discovery and disclosure

6

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." SCR Joint Venture, 559 F.3d at 137.

We review a district court's decision to decline supplemental jurisdiction over pendent state law claims for abuse of discretion. See, e.g., Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994).

II.    Analysis

Plaintiffs' principal claim is that by tearing down the Hotel Holland without providing any form of hearing beforehand, defendants deprived them of their property without due process of law in violation of the Fourteenth Amendment.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Due process requires that before state actors deprive a person of her property, they offer her a meaningful opportunity to be heard. See Armstrong v. Manzo, 380 U.S. 545, 552 (1965). The Supreme Court has held, however, that in emergency situations a state may satisfy the requirements of procedural due process merely by making available "some meaningful means by which to assess the propriety of the State's action at some time after

7

the initial taking." Parratt v. Taylor, 451 U.S. 527, 539 (1981). Where there is an emergency requiring quick action and where meaningful pre-deprivation process would be impractical, the government is relieved of its usual obligation to provide a hearing, as long as there is an adequate procedure in place to assess the propriety of the deprivation afterwards. Id. Plaintiffs assert that the district court's grant of summary judgment for the defendants was in error because they had produced evidence sufficient to create an issue of material fact regarding both whether there was a genuine emergency and whether a pre-deprivation hearing would have been practicable.

Our precedents concerning the application of the Parratt rule by district courts on motions for summary judgment may initially seem in tension. Further examination, however, reveals no fundamental inconsistency.

In Burtnieks v. City of New York, 716 F.2d 982 (2d Cir. 1983), the plaintiff owned a vacant apartment building in New York City that began to crack and buckle. The city determined that the building was a safety hazzard and obtained a declaration that it should be demolished. Despite the existence of a notice requirement in the New York City code, plaintiff was not informed of the City's decision, but learned of it informally through her plumber. She then hired an architect and engineer to inspect the building, both of whom reported to her that demolition was not necessary. When she reported these findings to the City, however, it refused to call off the demolition. Eventually, the building was torn down, approximately three months after the City initially determined that it represented a

8

threat to public safety.

Burtnieks sued, alleging that she was deprived of her property without due process, due to the lack of a pre-demolition hearing. The City argued that there had been no unconstitutional deprivation since the demolition had been necessitated by an emergency and there existed adequate post-deprivation procedures in the form of a tort remedy under state law. The district court granted summary judgment for the defendants on these grounds. We reversed the district court, holding that summary judgment was improper because there was a genuine dispute about whether an emergency existed, particularly in light of the three-month delay between the declaration of an emergency and the demolition of the building. We emphasized that "the existence *vel non* of an emergency" was an issue of material fact to which the usual standards for summary judgment applied. Id. at 988.

In Catanzaro v. Weiden, 188 F.3d 56 (2d Cir. 1999), we revisited the application of Parratt on motions for summary judgment. One of the plaintiffs, Catanzaro, owned two adjacent mixed-use buildings in downtown Middletown, New York. A car crashed into one of the buildings, knocking down its support beams and causing the building to buckle. Because this building was located close to a street that provided access to a firehouse and a hospital, the city immediately tore it down. The following day, the city concluded that Catanzaro's second building had become unstable due to the demolition of its neighbor, and needed to be either repaired immediately or demolished. When

9

Catanzaro claimed that he was unable to pay for the repairs, the city demolished the second building.

Plaintiffs sued, alleging, inter alia, a procedural due process violation because they were denied notice of the intention to demolish the buildings and any chance to contest the determinations that the buildings were threats to public safety. We affirmed a grant of summary judgment for defendants, finding that there was no constitutional violation because there was an adequate post-deprivation legal remedy. We held that emergency deprivations are constitutionally acceptable because "[t]he law should not discourage officials from taking prompt action to insure the public safety." Id. at 63. "[E]xacting hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation [would] encourage delay and thereby potentially increase the public's exposure to dangerous conditions." Id. For this reason, even while "the government may [not] avoid affording due process to citizens by arbitrarily invoking emergency procedures," id., an official's belief that the public is in immediate danger must be awarded significant deference. Thus, we reasoned, "where there is competent evidence allowing [an] official to reasonably believe that an emergency does in fact exist . . . the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." Id. In that case, we concluded, no reasonable trier of fact could find on the basis of the evidence in the record that Middletown officials acted arbitrarily or abused their

10

discretion in concluding that there was an emergency, and, for this reason, summary judgment for the defendants was warranted.

The two decisions are not inconsistent. While Catanzaro provides the substantive standard for determining when emergency action to safeguard the public in the absence of either hearing or notice constitutes a due process violation, nothing in the decision alters the standards for summary judgment in Parratt cases. Catanzaro holds that, where an adequate post-deprivation process exists, an official reasonably believing on the basis of competent evidence that there is an emergency does not effect a constitutional violation by ordering a building demolition without notice or a hearing. Whether the official abused his discretion or acted arbitrarily in concluding that a genuine emergency exists is a factual issue, subject to the usual considerations for a district court addressing a summary judgment motion. Summary judgment may not be awarded where there is a genuine issue of fact as to whether officials acted arbitrarily in declaring an emergency.

In Burtnieks, the existence of a three-month delay between when the city declared an emergency and when it demolished Burtniek's building gave rise to a genuine issue as to whether the defendants acted arbitrarily in proclaiming a need to protect the public by condemning the structure without providing its owner a pre-deprivation opportunity to be heard. In Catanzaro, by contrast, not only was there no delay before demolishing the buildings in question, but the buildings were situated on a street that provided access to a firehouse and a hospital. The plaintiffs in Catanzaro brought forth no evidence that

11

created a dispute concerning the town officials' reasonable belief that there was a need to take emergency action.

The case at bar is much closer to Catanzaro than to Burtnieks. Plaintiffs have not produced evidence sufficient to create a genuine dispute concerning whether the defendants abused their discretion in determining that an emergency existed. The Hotel Holland's proximity to State Road 11 necessitated the closing of this important thoroughfare and the damage to its facade created a danger of falling debris. In such a situation, no reasonable trier of fact could conclude that the Village officials' decision to take emergency action was arbitrary or abusive.

Plaintiffs argue that they have produced evidence that the Village could have adequately protected the public with less drastic measures. They assert that since the collapse of the Hotel Holland was not imminent, the Village could have protected the public with temporary devices such as boarding up the building and removing the debris from the sidewalk. Assuming *arguendo* that plaintiffs have raised valid questions about whether the Village chose the best possible method of safeguarding the public, such a showing is not sufficient to defeat summary judgment. As Catanzaro makes clear, such hindsight analysis of a municipality's means of dealing with an emergency would encourage delay and risk increasing the public's exposure to dangerous conditions. Since plaintiffs have not produced evidence sufficient to allow a reasonable finder of fact to conclude that the Village's decision to take emergency action was arbitrary or an abuse of

12

discretion, the district court correctly granted summary judgment to the defendants.

Because we conclude that there was no violation of the plaintiffs' constitutional rights, we do not reach the issues of qualified immunity and municipal liability. Furthermore, given the eventual dismissal of all of plaintiffs' federal claims, we find that the district court acted well within its discretion in declining to assert supplemental jurisdiction over plaintiffs' state-law claim. See Marcus v. AT & T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

**CONCLUSION**

For the reasons set forth above, the judgment of the district court is AFFIRMED.